FILED
September 25, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Aida Baeza
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| **APRIL RENEE McDOWELL,**<br>*Plaintiff,*<br>v.<br>**REBECCA LUMBRERAS, in her individual** capacity and, solely for prospective relief, in her official capacity,<br>*Defendant.* | Civil Action No.<br>**P-26-cv-00073**<br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT UNDER 42 U.S.C. § 1983 AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

1. Plaintiff April Renee McDowell ("Plaintiff"), appearing pro se, brings this action under 42 U.S.C. § 1983 against Rebecca Lumbreras ("Lumbreras") in her individual capacity for damages arising from alleged nonjudicial administrative conduct and, solely to the extent legally proper, in her official capacity for narrowly tailored prospective equitable relief. Plaintiff pleads from personal knowledge, certified reporter's records, clerk and e-filing records, contemporaneous emails, and information and belief only where operative records are uniquely within Defendant's or the court's possession or control.

## I. NATURE OF THE ACTION

2. This is a narrow federal civil-rights action about process, not custody. Plaintiff does not ask this Court to decide who should possess R.E.M., reverse or modify a Texas SAPCR or divorce judgment, recuse a state judge, direct a criminal prosecution, or act as an appellate court over the merits of any Texas family-law ruling.

3. The Complaint concerns a recurring administrative gatekeeping pattern in which Lumbreras, acting as Court Administrator for the 112th Judicial District, allegedly occupied the channel through which Plaintiff sought notice, participation, hearing information, presentment of emergency requests, and delivery of court-ordered evidence, while also transmitting disputed

factual characterizations about Plaintiff to counsel and potentially into judicial or law-enforcement decision-making channels.

4. The first principal transaction concerns the October 16-17, 2024 writ sequence. The certified reporter's record reflects that opposing counsel told Judge Pedro "Pete" Gomez that Plaintiff had not been served, wanted to appear, and had asked Lumbreras about appearing by Zoom. During the same proceeding Judge Gomez stated that Plaintiff called the office "every other hour, about every other hour" and asked the same question. The matter was taken off the docket for that day. The official officer's return reflects that the writ was served and executed the following day, October 17, 2024 at 2:45 p.m., after which possession of R.E.M. was materially affected.

5. The second principal transaction concerns a court-ordered psychological evaluation. The court made receipt of the evaluation relevant to supervision and future visitation. Plaintiff's counsel transmitted the completed evaluation to court administration, and Lumbreras acknowledged that it had been "Received and printed for Judge." Plaintiff later heard Judge Gomez state on the record, in substance, that he had never received the evaluation.

6. The Complaint also pleads corroborating administrative-role evidence: a June 2025 internal notation restricting Plaintiff to hearing inquiries only; repeated judicial references to complaints from the clerk and court-administrator offices about Plaintiff's calls; court-administration communications describing Plaintiff's contacts with the Sheriff's Office as "non-stop" and "constant" while a criminal investigation remained active; multiple emergency filings for which Plaintiff alleges no written or on-record ruling was entered; documented eFile status changes and presentment irregularities involving time-sensitive motions; and September 2026 communications concerning remote appearance and extension of temporary restraints.

7. Plaintiff does not allege that every adverse communication, unanswered filing, administrative mistake, or unfavorable judicial result was unconstitutional. She seeks liability only for Lumbreras's own intentional, knowing, reckless, or deliberately indifferent nonjudicial conduct that caused a concrete loss or material impairment of federally protected process.

## II. PARTIES

8. Plaintiff April Renee McDowell is a Texas resident and the mother of R.E.M. The minor child is identified by initials consistent with Federal Rule of Civil Procedure 5.2(a)(3).

9. Defendant Rebecca Lumbreras was at all relevant times the Court Administrator associated with the 112th Judicial District Court. Plaintiff sues Lumbreras in her individual capacity for damages based on alleged administrative or ministerial acts, not protected adjudicative conduct, and, solely to the extent legally proper, in her official capacity for prospective equitable relief directed to ongoing administrative handling.

10. Judge Gomez, District Clerk Darla Cude, Robert Ryan Moran-McDowell, Rafael Chavez Rodriguez, the guardian ad litem, law-enforcement personnel, prosecutors, and other actors appearing in the chronology are not named as damages defendants merely because they participated in related proceedings. Their conduct is referenced only where necessary to explain notice, causation, record handling, administrative routing, or Defendant's alleged role.

## III. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims under the First and Fourteenth Amendments through 42 U.S.C. § 1983.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions alleged occurred in Pecos County, Texas, within the Western District of Texas, Pecos Division.

## IV. FEDERAL-STATE BOUNDARY

13. Plaintiff has pursued state-court appellate, mandamus, recusal, bill-of-review, and other remedies. The existence or availability of those proceedings does not convert this Complaint into an appeal from a state judgment because Plaintiff challenges alleged independent administrative conduct rather than the correctness of the state judgments themselves.

14. Plaintiff seeks no order directing the state court how to decide custody, possession, support, venue, recusal, emergency relief, or any pending family-law issue. She seeks damages for independent federal injury caused by Defendant's own acts. Because related state proceedings remain active and Lumbreras continues to occupy an administrative channel affecting Plaintiff's filings, scheduling communications, and requests for routing or presentment, Plaintiff also seeks only such narrowly tailored prospective relief as this Court may lawfully grant to prevent recurrence of an ongoing or imminent federal violation.

15. Plaintiff further does not seek liability for Lumbreras merely carrying out a facially valid court order or faithfully relaying a specific judicial instruction. To the extent a challenged communication or act was expressly directed by Judge Gomez and protected by applicable quasi-judicial immunity, Plaintiff does not seek damages for that act.

16. Plaintiff asserts only her own federal rights and injuries. She does not purport to represent R.E.M. pro se or seek recovery of damages belonging to the minor child. Child-related records are referenced only where they bear on Plaintiff's own protected parent-child relationship, causation, damages, or the factual context of prospective risk.

17. Plaintiff does not assert an ADA Title II or Section 504 claim against Lumbreras in her individual capacity in this Complaint. Any disability-access administrative complaint or claim against a legally proper public entity is separate from the three Section 1983 counts pleaded here.

## V. FACTUAL ALLEGATIONS

### A. Preexisting parental order and the 2024 procedural setting

18. A 2022 Palo Pinto County SAPCR order established the pre-dispute conservatorship and possession framework. The later Pecos divorce petition acknowledged the existence of a final custody order and initially stated that the petitioner was not then asking Pecos County to change that order.

19. The SAPCR was later transferred to Pecos County. Plaintiff has challenged aspects of service, consent, venue, and statutory procedure surrounding that transfer. Those challenges are background only and are not independent federal claims in this Complaint.

20. In September 2024, Robert Ryan Moran-McDowell filed a verified modification pleading requesting extraordinary relief, including a writ of attachment, ex parte restraints, modification of conservatorship, denial or supervision of Plaintiff's possession and electronic communication, psychological examination, and other restrictions. The asserted predicates included allegations concerning mental health, family violence, sexual abuse, threatened absconding, and danger to the child.

21. Plaintiff alleges that subsequent governmental and clinical records materially contradicted, qualified, or failed to substantiate several of those predicates. Plaintiff does not allege that every allegation later disproved or ruled out was knowingly false when first made; the federal issue is what process Plaintiff received when contrary material existed and when administrative handling allegedly prevented or delayed its meaningful presentation.

### B. October 2024: notice, service, requested participation, call characterization, and writ handling

22. On October 3, 2024, Plaintiff emailed the 112th District Court account stating that she had been served with a writ of attachment, that important information was not being presented,

that she believed the allegations were untrue, and that removal of the child would create an immediate safety concern. Lumbreras responded that private merits communications with the judge were not permitted and that case communications would occur in court.

23. Plaintiff does not challenge Lumbreras's refusal to facilitate an improper ex parte merits conversation. The significance of the October 3 correspondence is that court administration had actual notice that Plaintiff disputed the predicates, asserted contrary evidence, and was seeking an opportunity to be heard.

24. On October 16, 2024, the certified reporter's record reflects that opposing counsel told Judge Gomez that Plaintiff had not been served and that Plaintiff wanted to appear. Counsel further stated that he had asked Lumbreras whether Plaintiff could appear via Zoom because Plaintiff had another court conflict.

25. The reporter's record further reflects Judge Gomez stating that Plaintiff had contacted the office earlier and, during the same exchange, stating that Plaintiff called the office "every other hour, about every other hour" and asked the same question. Plaintiff disputes the accuracy of that frequency characterization and seeks the objective telephone records and internal communications from which it arose.

26. The reporter's record reflects Judge Gomez agreeing to issue another writ for a new hearing date and stating, "I'll take this off of the docket for today." Plaintiff separately received administrative communications explaining that the hearing had not occurred because service had not been perfected and directing her not to log into a Zoom link.

27. The certified clerk chronology nevertheless reflects October 16 writ-related order and issuance activity. Plaintiff seeks discovery into what administrative processing occurred after the hearing was removed from the docket, who initiated it, what directions Lumbreras received, and

whether any independent administrative act materially impaired Plaintiff's opportunity to participate before writ-related process affected possession.

28. The officer's return states that the writ came to hand on October 17, 2024 at 1:52 p.m. and was executed at 2:45 p.m. that day. Plaintiff alleges that the resulting loss of possession occurred after the October 16 proceeding in which lack of service and her request to participate had been acknowledged and the matter had been taken off the docket. Plaintiff pleads this sequence as a concrete loss of predeprivation process, not as a request that this Court review the substantive correctness of the state custody determination.

**C. June 2025: judicial repetition of the call narrative and internal communication restriction**

29. On June 18, 2025, after Plaintiff's counsel withdrew and Plaintiff became self-represented, Judge Gomez stated on the record: "The district clerk's office and the court administrator's office are up to about right here with all your phone calls." The statement expressly attributed the concern to those two administrative offices.

30. During the same exchange, Judge Gomez also told Plaintiff that, as her own lawyer, she could call those offices "to see if something has been set" and instructed her to verify her current address and telephone number so she could receive notice of hearings. Thus, the official record simultaneously reflects criticism of Plaintiff's call volume and judicial acknowledgment that hearing-status contact was proper and expected.

31. Plaintiff possesses photographic evidence of an internal court case-management entry dated June 20, 2025 stating: "APRIL MCDOWELL LITTLE MAY INQUIRE ABOUT

HEARINGS ONLY." Plaintiff does not presently know who created, requested, approved, or authorized that restriction.

32. Plaintiff seeks the audit trail, user history, telephone records, internal messages, and any judicial directive underlying the June 20 entry. The close sequence between the June 18 judicial statement and the June 20 internal restriction makes the source, factual basis, and administrative implementation of the call characterization material to Defendant's role.

33. Plaintiff does not allege that a limitation on requests for legal advice is unconstitutional. Her allegation is narrower: administrative personnel allegedly created or implemented a communication restriction based at least in part on disputed characterizations of her contact frequency, while she was a newly self-represented litigant in an active parent-child case and depended on court administration for hearing information and presentment channels.

**D. November 2025: court administration inserted a disputed call narrative into an active criminal-investigation context**

34. At the time relevant to the following communications, Plaintiff was cooperating with a Pecos County Sheriff's Office criminal investigation concerning alleged interference with child custody and related conduct. Plaintiff alleges that the assigned deputy continued to receive supplemental evidence and communicated that the matter would require presentation to a grand jury.

35. On November 5, 2025, Lumbreras sent an email to Plaintiff's then-counsel and opposing counsel stating: "Your client has been calling the sheriff's office non-stop" concerning an incident, that calls to the Sheriff and the deputy "have been constant," and asking, "Will you need a hearing on this matter?"

36. Plaintiff's counsel promptly questioned the source, incident, basis, and purpose of the communication, including whether the Sheriff's Office was making a complaint to the judge and whether a show-cause-type hearing was being contemplated. A later response from Lumbreras stated in substance that the Sheriff's Office had "let me know" Plaintiff was calling and that Lumbreras was checking whether counsel needed a hearing.

37. Plaintiff disputes that the objective history of her contacts supports the characterizations "non-stop" or "constant." She seeks the Sheriff's Office call-detail records, court telephone records, emails, internal notes, and communications sufficient to identify the actual frequency and substance of contacts and whether Lumbreras added, amplified, or merely repeated the characterization she received.

38. Plaintiff is presently unaware of any filed family-court motion, pleading, judicial order, noticed hearing request, or other docketed matter that required court administration to raise Plaintiff's contacts with the Sheriff's Office with counsel on November 5, 2025. Plaintiff seeks production of any such record and any judicial instruction authorizing the communication.

39. A later written response to Plaintiff's public-records request stated that criminal matter No. 25-0210 remained pending at the 83rd District Attorney's Office and was still considered work product. Plaintiff therefore alleges that the criminal matter was active rather than shown to have been closed when she sought the underlying communications.

40. Plaintiff does not plead as an established fact that Lumbreras obstructed justice, controlled a charging decision, or caused the criminal investigation to end. She alleges a concrete communication sequence requiring discovery into whether Lumbreras communicated with investigators, supervisors, or prosecutors concerning Plaintiff's credibility, contact frequency,

evidence submissions, family-court litigation, or the handling of the criminal matter, and whether any such communication affected the investigation's status, referral, presentation, or disposition.

41. The November 2025 transaction is relevant to this federal action because it is additional evidence that Lumbreras allegedly did more than neutrally route papers: she communicated disputed factual characterizations about Plaintiff's use of governmental processes and raised the possibility of court action based on those contacts. Plaintiff pleads the transaction as administrative-role, causation, intent, and prospective-risk evidence, not as a freestanding right to compel prosecution of another person.

**E. The psychological evaluation became a specific condition of future restrictions**

42. At the October 22, 2025 final hearing, Judge Gomez addressed the absence of a complete psychological report. The reporter's record reflects that the court gave Plaintiff approximately twenty days to provide the evaluation, directed that counsel provide it to the court, and tied future supervised visitation to whether the court received the material and whether the report raised concerns.

43. The reporter's record further reflects that the court would await the psychological material before moving forward with preparation of the decree. Thus, receipt and presentment of the evaluation were not collateral matters; the court itself made the evaluation part of the decisional process affecting Plaintiff's parent-child access.

44. Before the October 22 hearing, Plaintiff had provided psychological material to the guardian ad litem. On October 16, 2025, the guardian ad litem acknowledged in writing receipt of Plaintiff's email and psychological evaluation.

45. On November 11 and 12, 2025, Plaintiff continued communicating with counsel regarding the court's deadline and the provider's release of the full breakdown, explaining that

medical-record production required additional processing time and asking counsel to ensure the court received the material.

46. Plaintiff's counsel subsequently transmitted the completed evaluation to court administration. Lumbreras responded that the material had been "Received and printed for Judge." Plaintiff alleges that this communication identifies Lumbreras as a direct administrative participant in the receipt and downstream handling of the evaluation.

47. Plaintiff later independently e-filed evaluation-related material and repeatedly placed her compliance before the court. Additional filings and emergency materials referenced the court-ordered psychological evaluation and compliance.

48. On or about September 16, 2026, Plaintiff heard Judge Gomez state on the record, in substance, that he had never received the evaluation. Plaintiff will rely on the certified reporter's record for the exact wording.

49. Plaintiff does not allege that the receipt/nonreceipt conflict, standing alone, proves intentional concealment. She alleges a concrete routing failure requiring an explanation: court administration acknowledged receipt and printing for the judge, while the judge later stated nonreceipt.

50. Plaintiff alleges on information and belief that email metadata, forwarding records, print or spool logs if maintained, document-management entries, file-access history, internal messages, and communications with chambers will show what Lumbreras personally did after receipt and whether the material was actually presented to Judge Gomez. Those internal records are uniquely within Defendant's or the court's possession or control.

51. Plaintiff alleges that the routing failure was causally significant because the evaluation directly addressed a predicate on which supervision and other restrictions had been conditioned,

yet the restrictive framework remained consequential while the judge allegedly did not receive the material.

**F. Emergency filings and unresolved presentment**

52. Plaintiff repeatedly submitted emergency filings raising child-safety, possession, access, communication, and related requests for judicial action. Plaintiff alleges that multiple such emergency requests received no written ruling and no ruling stated on the record.

53. Plaintiff does not allege that Lumbreras possessed authority to decide the merits of those emergency motions, nor does she seek to impose liability merely because a judge did not rule. The administrative question is whether each properly submitted emergency request was actually presented to the judicial officer, when presentment occurred, what happened to supporting evidence, and whether any request was screened, delayed, diverted, or left unpresented at the administrative level.

54. Because Lumbreras repeatedly served as an administrative point of contact for scheduling, hearing requests, presentment communications, remote-appearance requests, and receipt of court-ordered material, Plaintiff alleges that the disposition and routing history of unresolved emergency requests is relevant to personal participation, causation, and the likelihood of recurrence.

**G. Documented eFile presentment, rejection, and routing irregularities**

55. Plaintiff possesses contemporaneous screenshots from eFileTexas/re:Search showing that time-sensitive filings were rejected, remained under review, were returned to the clerk, or carried court-added hearing information while Plaintiff was attempting to obtain judicial action.

56. An August 26, 2026 screenshot reflects that a verified motion to enforce possession and access submitted on August 1, 2026 appeared with a "Rejected" status. The visible screen

does not display a rejection reason. Plaintiff seeks the rejection audit trail, reviewer identity, timestamp, rule or filing basis, rejection comment, and notification history.

57. A September 4, 2026 court-access image of Plaintiff's verified emergency motion for continuance or, alternatively, remote appearance bears a court notation stating: "Hearing is set for September 23rd at 10:00 am." Plaintiff alleges that this notation demonstrates that the filing entered the court's handling workflow and received administrative or judicial attention.

58. A September 15, 2026 image documents a Tyler/re:Search system error stating that an anti-forgery token was intended for a different claims-based user than the current user. Plaintiff does not allege that this technical error proves tampering or intentional interference. She preserves it as contemporaneous evidence of a user/session access failure during active litigation.

59. A September 16, 2026 eFile screenshot reflects that Plaintiff submitted a motion, proposed order, and supporting evidence at approximately 8:39 a.m., with all three items appearing as "Under Review." A court-access copy of the same emergency remote-appearance filing later reflects "Returned to clerk."

60. The September 16 filing expressly requested an express judicial ruling concerning remote appearance, safety safeguards, or an alternative limited continuance and stated that Plaintiff was prepared to participate fully, testify under oath, submit to cross-examination, comply with exhibit procedures, and remain available by live video.

61. Plaintiff does not allege that a filing status, return, rejection, or technical error alone establishes unconstitutional conduct. She alleges that these objective records make the audit history material: who reviewed each submission, when it was accepted, rejected, returned, or routed; the reason for each action; whether supporting evidence remained attached; and whether the motion was actually presented to the judicial officer before the relevant hearing.

H. September 2026: requests for judicial ruling and temporary-restraint communications

62. On September 2, 2026, Plaintiff filed a Verified Motion for Continuance or, in the Alternative, Motion to Appear Remotely concerning a September 3 hearing. Plaintiff stated that she had received actual notice only on August 31, identified travel and work constraints, and affirmatively sought a lawful method to participate rather than avoid the hearing.

63. Plaintiff separately emailed court administration asking that the filed motion be presented to the judge as soon as practicable. Lumbreras responded that the hearing was not being continued, that it was in person, and that Plaintiff could not appear by Zoom.

64. Plaintiff then expressly asked whether Lumbreras's email was intended to communicate that the presiding judge had considered and denied the filed motion. Plaintiff requested identification of a signed order, docket entry, or other record reflecting such a ruling and, if no ruling had yet been made, asked that the pending motion be presented to the judge before the hearing.

65. Lumbreras responded that she would not discuss Plaintiff's perceived fairness, referenced the Court of Appeals, and stated: "The hearing will happen tomorrow, period." Plaintiff presently does not know whether Lumbreras was relaying an actual, specific judicial ruling or independently communicating the disposition of Plaintiff's pending motion.

66. Plaintiff does not assert an automatic federal constitutional right to appear by Zoom. She pleads this transaction as evidence of Defendant's continuing administrative role and as a basis for discovery into whether judicial requests were actually presented before Defendant communicated their disposition.

67. On September 2, 2026, Lumbreras also communicated with opposing counsel concerning resetting a hearing and instructed counsel to "extend your TRO to that date for

Judges signature." Opposing counsel responded that he would prepare a motion and proposed order. A successor TRO was later signed.

68. The Eighth Court of Appeals subsequently conditionally granted mandamus relief concerning temporary-restraint portions of the August 21 and September 10, 2026 orders and directed the trial court to vacate those restraint provisions. Plaintiff does not allege that the appellate ruling automatically imposes liability on Lumbreras; the transaction is relevant to whether Lumbreras was relaying an express judicial directive or independently initiating, directing, or materially facilitating procedural action.

I. Injury and causation limitations

69. Plaintiff's principal federal injury is the loss or material impairment of meaningful procedural opportunities: the opportunity to participate before writ-related process affected possession, and the opportunity to have court-ordered material evidence timely presented to the judicial decisionmaker through the process the court itself prescribed.

70. The later state-court restrictions are alleged as consequential harm flowing from those independent procedural deprivations, not as the constitutional wrong itself. Plaintiff does not ask this Court to determine that the state court reached the wrong custody result.

71. Plaintiff does not attribute every adverse state-court outcome, every day of separation, the nonresolution of every emergency filing, or any prosecutorial decision to Lumbreras. Plaintiff alleges, however, that she experienced a continuous period without in-person access to R.E.M. from January 28, 2026 through August 21, 2026 - 205 elapsed days, or 206 calendar days when both endpoint dates are counted. Plaintiff seeks damages only for that portion of the separation, and any resulting injury, that competent evidence proves was proximately caused or materially prolonged by Lumbreras's own actionable administrative conduct.

72. Plaintiff alleges that the repeated disputed characterization of her contacts, the internal communication restriction, the routing discrepancy concerning the psychological evaluation, and the handling of requests for judicial action collectively make prospective administrative recurrence more than a purely historical concern while related proceedings remain active.

73. Plaintiff has documented clinical mental-health records from October-November 2025 generated in connection with a court-referred psychiatric evaluation. Those records document PTSD, generalized anxiety, and mild recurrent major depressive disorder, along with anxiety, sleep disturbance, restlessness, and trauma-related symptoms during the custody litigation. They also document calm and cooperative presentation, normal thought content, and no current suicidal or homicidal ideation or psychosis. Plaintiff alleges aggravation of documented symptoms from Defendant's challenged conduct; she does not allege that Defendant created every diagnosis or all preexisting trauma.

74. The existing clinical record includes an October 29, 2024 provider progress note documenting R.E.M.'s diagnosis of F43.20 Adjustment Disorder, Unspecified. The note states that symptoms appeared after conflict between the parents that led to separation and a pending divorce, identifies the active custody case as an ongoing stressor, and records that R.E.M. was reluctant to discuss home life, was fidgety and restless, had difficulty maintaining eye contact and concentrating for long periods, and reported that people were "always asking" him about home life. The same note otherwise records a largely intact mental-status examination and no identified risk concerns. Other state-court materials later describe attachment-related concerns and a reported attachment-disorder diagnosis; Plaintiff does not rely on the October 29 note as proof of that later diagnosis. Plaintiff references the child-related material only as context for the

seriousness of the parent-child consequences and asserts no independent claim or damages belonging to R.E.M. in this pro se action.

## VI. LEGAL FRAMEWORK

75. Section 1983 provides a remedy against a person who, under color of state law, causes the deprivation of a federal right. Plaintiff alleges that Lumbreras acted under color of state law through her official court-administration role.

76. The Supreme Court has long recognized that parents possess a protected liberty interest in the care, custody, and management of their children and that due process requires a meaningful opportunity to be heard before governmental action materially interferes with that relationship. See Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Santosky v. Kramer, 455 U.S. 745, 753-54 (1982).

77. Plaintiff recognizes that qualified immunity requires a clearly established right defined at an appropriate level of specificity. She therefore does not rely solely on broad parental-rights principles. Fifth Circuit precedent distinguishes administrative court personnel who merely execute specific judicial commands from those performing routine ministerial functions. See Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981); Williams v. Wood, 612 F.2d 982, 984-85 (5th Cir. 1980).

78. Plaintiff further recognizes that access-to-courts liability requires actual injury to a nonfrivolous legal position, not merely delay or inconvenience. See Lewis v. Casey, 518 U.S. 343, 349-53 (1996); Ryland v. Shapiro, 708 F.2d 967, 972-75 (5th Cir. 1983).

79. Plaintiff's claims are based on alleged independent administrative conduct rather than injury caused by a state judgment as such. The Fifth Circuit has reiterated that the key Rooker-Feldman inquiry is the source of the alleged injury: where the injury arises from a defendant's own conduct rather than the state judgment itself, the claim is independent even though the

conduct may have contributed to later state-court harm. See English v. Crochet, No. 25-30074, slip op. at 5-6 (5th Cir. Oct. 8, 2025). Plaintiff does not seek reversal of a state judgment.

80. Plaintiff further alleges that the challenged deprivations were not merely random, unforeseeable losses for which meaningful predeprivation process was impossible. The alleged conduct arose within Defendant's recurring, delegated administrative role in notice, routing, presentment, scheduling, and handling of court-ordered material, where predeprivation safeguards - actual presentment, accurate routing, notice, and an opportunity to participate - were practicable. Plaintiff alleges that later appeals, mandamus proceedings, or postdeprivation remedies could not fully restore the lost opportunity to be heard before the October 2024 writ execution or the timely consideration of the court-ordered evaluation.

## VII. CLAIMS FOR RELIEF

### COUNT I - FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS October 2024 Notice and Participation Transaction

81. Plaintiff incorporates the preceding factual allegations to the extent consistent with this Count.

82. Plaintiff possessed a protected liberty interest in her parent-child relationship and was entitled to constitutionally adequate notice and a meaningful opportunity to participate before state process materially interfered with that relationship.

83. Plaintiff alleges that Lumbreras personally participated in administrative handling of the October 2024 writ proceeding after receiving notice that Plaintiff sought to participate and disputed the predicates. The reporter's record reflects that Plaintiff had not been served, wanted to appear, and had asked Lumbreras about remote participation; the court then took the matter off the docket for that day.

84. Plaintiff further alleges that the same proceeding contains a disputed judicial characterization of her calling the office "every other hour, about every other hour." Because the characterization concerned Plaintiff's attempts to obtain information and participate, the objective call records and the source of that characterization are relevant to whether administrative personnel framed Plaintiff's lawful efforts in a manner that affected her access to process.

85. Plaintiff alleges on information and belief that, after the matter was taken off the docket and despite the acknowledged lack of perfected service and Plaintiff's effort to participate, Lumbreras personally participated in or controlled nonjudicial administrative processing that materially impaired Plaintiff's opportunity to be heard before writ-related process affected possession. The precise routing, presentment, and instruction records are uniquely within Defendant's or the court's possession or control.

86. Plaintiff does not seek liability for any act specifically required by a facially valid order or express judicial direction. This Count is limited to Defendant's own independent administrative or ministerial conduct, if proven.

## COUNT II - FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
### Psychological-Evaluation Receipt and Presentment

87. Plaintiff incorporates the preceding factual allegations to the extent consistent with this Count.

88. The court expressly made the psychological evaluation relevant to supervision and future visitation and directed that the material be provided to the court. Plaintiff completed the process, counsel transmitted the evaluation to court administration, and Lumbreras personally acknowledged that it had been "Received and printed for Judge."

89. Plaintiff alleges on information and belief that, after personally acknowledging receipt and printing of the court-ordered psychological evaluation for the judge, Lumbreras participated in the administrative handling of that material and that the evaluation thereafter failed to reach the judicial officer for whom Defendant represented it had been printed. The precise downstream routing records are uniquely within Defendant's or the court's possession or control.

90. Plaintiff does not allege that the receipt/nonreceipt discrepancy alone proves intentional concealment. Plaintiff alleges that the documented receipt, Defendant's admitted handling, the materiality of the evaluation to the court's stated decisional process, and the subsequent judicial nonreceipt plausibly support a claim of intentional, knowing, reckless, or deliberately indifferent interference if the internal routing evidence confirms Defendant acted independently rather than pursuant to a specific judicial directive.

91. As a direct and proximate result of the alleged deprivation of meaningful process, Plaintiff alleges loss or material impairment of the opportunity for timely judicial consideration of the evaluation before or during the continuation of restrictive access conditions, together with emotional and consequential injury proximately caused by Defendant's own actionable conduct rather than by an independent judicial decision.

## COUNT III - FIRST AMENDMENT RIGHT TO PETITION / ACCESS TO COURTS
### Plead in the Alternative

92. Plaintiff incorporates the preceding factual allegations to the extent consistent with this Count.

93. Plaintiff repeatedly used formal court processes to seek rulings, present contrary evidence, request participation, and invoke governmental channels for redress. She pleads this Count in the alternative and limits it to specific nonfrivolous legal opportunities allegedly lost or materially impaired by Defendant's own nonjudicial conduct.

94. Plaintiff alleges that Defendant's independent interception, screening, nonpresentment, materially false administrative characterization, or other interference, if proven and causally connected to the identified legal opportunities, impaired access to adjudication rather than merely making litigation more difficult. Plaintiff does not claim a constitutional right to favorable rulings, preferred scheduling, remote appearance as such, or prosecution of another person.

95. The underlying nonfrivolous legal opportunities allegedly impaired are limited to: (a) Plaintiff's opportunity to participate before writ-related process affecting possession was implemented when the official record reflected that service had not been perfected and Plaintiff was affirmatively seeking to appear; and (b) Plaintiff's opportunity to obtain timely judicial consideration of the court-ordered psychological evaluation through the process the state court expressly established before supervision and related access restrictions became consequential.

96. The June 2025 communication restriction, November 2025 Sheriff-contact communication, unresolved emergency-presentment questions, documented eFile routing/status irregularities, and September 2026 administrative communications are pleaded as corroborating evidence of Defendant's role, intent, causation, and recurrence risk. They do not independently establish actual injury under this Count unless discovery ties them to loss or material impairment of an identified nonfrivolous legal opportunity.

97. Plaintiff alleges actual injury only if Defendant's independent nonjudicial conduct caused the loss, practical foreclosure, or material impairment of one of the identified opportunities. Delay, inconvenience, unfavorable rulings, reputational offense alone, or the mere fact that Plaintiff later pursued appellate remedies are not alleged as sufficient injury.

## VIII. IMMUNITY, CAUSATION, AND PLEADING LIMITATIONS

98. Plaintiff does not seek to impose respondeat-superior liability. Each claim depends on proof of Lumbreras's own conduct.

99. Plaintiff does not seek damages for conduct specifically compelled by a facially valid judicial order or express judicial directive. Each challenged transaction therefore requires proof that Defendant independently exercised administrative discretion, screening, routing, withholding, presentment, characterization, or communication authority rather than merely executing an identified command of Judge Gomez.

100. Plaintiff recognizes that qualified immunity applies unless Defendant violated a constitutional right that was clearly established in the specific factual context. The Complaint therefore pleads the documentary transactions in detail and limits liability to Defendant's own nonjudicial conduct while seeking discovery into internal facts uniquely within Defendant's control bearing on whether she acted independently or under judicial direction.

101. Plaintiff also recognizes that negligence does not establish a procedural-due-process violation. The claims require proof of intentional, knowing, reckless, or deliberately indifferent administrative conduct sufficient under governing federal law.

102. Plaintiff does not plead criminal obstruction, conspiracy, witness tampering, intentional eFile manipulation, or interference with prosecution as established offenses. Communications involving law enforcement, filing-system irregularities, and external relationships are pleaded only to the extent they bear on Defendant's own conduct, causation, state of mind, recurrence, or the need for discovery.

103. Plaintiff pleads disputed characterizations, routing conflicts, and filing-status irregularities as testable facts, not as proof of corrupt motive. Where authorship, routing, or judicial direction is unknown, Plaintiff pleads on information and belief only because the

relevant audit trails, internal communications, and routing records are maintained by governmental actors and are not presently accessible to Plaintiff.

## IX. DAMAGES

104. Plaintiff seeks compensatory damages only for injuries legally caused by Defendant's actionable conduct, including proven emotional distress, aggravation of documented trauma-related symptoms, out-of-pocket expenses, lost income or business opportunity where supported by competent evidence, and other recoverable consequential loss. Plaintiff further alleges that the challenged conduct occurred during and allegedly contributed to or prolonged a continuous period from January 28, 2026 through August 21, 2026 in which she had no in-person access to R.E.M. Plaintiff seeks compensation only for the legally ascertainable portion of that separation and resulting injury that competent evidence ties to Defendant's actionable conduct.

105. Plaintiff seeks nominal damages for any constitutional violation established without compensatory proof.

106. Plaintiff seeks punitive damages only if the evidence establishes reckless or callous indifference to federally protected rights or other culpability sufficient under federal law.

107. Plaintiff seeks no double recovery and will allocate damages to the conduct and injury actually proven.

## X. PRAYER FOR RELIEF

108. WHEREFORE, Plaintiff respectfully requests judgment in her favor and the following relief:

A. Compensatory damages in an amount determined by the jury;

B. Nominal damages for any constitutional violation established without compensatory proof;

C. Punitive damages against Defendant where legally and factually supported;

D. Taxable costs and any other relief available to a prevailing pro se litigant under applicable law;

E. Prejudgment and post-judgment interest as allowed by law;

F. To the extent Plaintiff establishes Article III standing and the Court possesses equitable authority, narrowly tailored prospective relief requiring that Defendant refrain from independently screening, withholding, refusing presentment of, materially mischaracterizing, or purporting to adjudicate Plaintiff's properly submitted filings, court-ordered evidence, or requests for judicial action outside a documented judicial directive, without directing the state court how to rule on any substantive matter;

G. Such narrowly tailored evidentiary-preservation relief as the Court may lawfully order upon proper motion concerning records material to the pleaded transactions, without treating ordinary civil discovery as substantive relief;

H. Any other lawful relief consistent with the federal-state boundary pleaded in this Complaint.

## XI. JURY DEMAND

109. Plaintiff demands a jury trial on all issues so triable under Federal Rule of Civil Procedure 38.

Respectfully submitted,

/s/ April Renee McDowell
APRIL RENEE McDOWELL
Plaintiff, Pro Se
P.O. Box 1222
Liberty Hill, Texas 78642
Email: aprilmcdowellhomes@gmail.com
Telephone: 512-786-2273
Fax: None

Dated: September 25, 2026